JUDGE CROTTY
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTIAN LOUBOUTIN S.A.S., CHRISTIAN LOUBOUTIN L.L.C. and CHRISTIAN LOUBOUTIN,<br><br>Plaintiffs,<br><br>v.<br><br>ALBA FOOTWEAR, LLC, EASY PICKINS, INC., ALAN H. WARSHAK, JOHN DOES and JANE DOES A-Z (UNIDENTIFIED) AND XYZ COMPANIES (UNIDENTIFIED),<br><br>Defendants. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | CIVIL ACTION NO.:<br><br>**13 CIV 3536**<br><br> |

## COMPLAINT

Plaintiffs, Christian Louboutin S.A.S., Christian Louboutin L.L.C. and Christian Louboutin (collectively, "Plaintiffs") file this Complaint and state as follows:

### JURISDICTION AND VENUE

1. This is an action for injunctive relief and damages for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for trademark infringement, trademark dilution, trademark counterfeiting, unfair competition and deceptive acts and practices under the laws of the State of New York.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction

pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367 over Plaintiffs' claims for trademark infringement, trademark dilution, trademark counterfeiting, unfair competition and deceptive acts and practices under the laws of the State of New York.

3.  This Court has personal jurisdiction over Defendants in that they do business in the State of New York. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that the Defendants are entities or individuals, which do business in this District and/or are subject to personal jurisdiction in this District. Moreover, a substantial part of the events or omissions giving rise to the claims occurred in this District and relevant books and records together with the counterfeit goods sold by Defendants are located in this District.

## THE PARTIES

4.  Plaintiff Christian Louboutin S.A.S. is a corporation, organized and existing under the laws of France, having its principal place of business at 19 rue de Jean-Jacques Rousseau, Paris, France 75001 ("Louboutin S.A.S."). Plaintiff also maintains a showroom and office at 306 West 38th Street, New York, NY, USA.

5.  Plaintiff Christian Louboutin, L.L.C. ("CLLLC") is a New York corporation with a principal place of business at 306 West 38th Street, New York, New York 10018. CLLLC has the exclusive right to distribute and sell Louboutin Footwear, as defined below, in Christian Louboutin retail premises (stand-alone shops and shop-in-shop), in the United States.

6.  Plaintiff Christian Louboutin is an individual and a citizen of the country of France. The Plaintiffs identified in Paragraphs 4, 5 and 6 shall be identified collectively as "Plaintiffs."

7. Upon information and belief, Defendant Alba Footwear, LLC ("Alba") is a limited liability company having an address and conducting business at 933 Canada Court, City of Industry, CA 91748 and doing business on defendant's web site http://www.albafootwear.com. Upon information and belief, Defendant Alba, transacts business, supplies and ships counterfeit and infringing versions of Plaintiffs' products into the State of New York and into this District. Upon information and belief, Defendant Alba sells its infringing and counterfeit versions of Plaintiffs' products within the State of New York and in this District.

8. Upon information and belief, Defendant Easy Pickins, Inc. ("Easy Pickins") is a New York corporation with its principal place of business located at 450 Seventh Avenue Suite 701, New York, New York, 10123-0701. Easy Pickins conducts business at several stores in New York as well as on defendant's web site http://www.easypickins.com. Upon information and belief, Defendant Easy Pickins transacts business, supplies and ships counterfeit and infringing versions of Plaintiffs' products into the State of New York and into this District. Upon information and belief, Defendant Easy Pickins sells its infringing and counterfeit versions of Plaintiffs' products within the State of New York and in this District. Upon information and belief, Defendant Easy Pickins also sells infringing and counterfeit versions of Plaintiffs' products designed by others, including ALBA Footwear, LLC, within the State of New York and in this District.

9. Upon information and belief, Defendant Alan H. Warshak is an individual residing in the State of New Jersey, with an address of 9 Tulip Court, Oakhurst, New Jersey, 07755-1659. Upon information and belief, Defendant Alan Warshak is the President of Easy Pickins and was responsible for any purchasing decisions that led to the company's sale of the

counterfeit and infringing products as well as the decision to ignore Plaintiffs' demand that Easy Pickins cease and desist as well as account for its sale of the counterfeit and infringing products.

10. Defendants identified as various JOHN DOES and JANE DOES, are various individuals and entities conducting business at various locations in the State of New York and in this District, including those individuals who purchased Alba's and Easy Pickins' counterfeit goods bearing Plaintiffs' trademark for further distribution and sale through this District and throughout the United States, and are present in and/or doing business in the State of New York and subject to the jurisdiction of this Court. The identities of the various JOHN DOES and JANE DOES defendants are not presently known and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available (each a "Doe" and collectively "Does").

11. Upon information and belief, Defendants, the XYZ COMPANIES, through their agents, servants, and employees are conducting business at various locations in the State of New York and elsewhere, including those entities that purchased Defendants' counterfeit goods bearing Plaintiffs' trademark for further distribution and sale through this District and throughout the United States, and are present in and/or doing business in the State of New York and subject to the jurisdiction of this Court. The identities of such Defendants are not presently known and the Complaint herein will be amended, if appropriate, to include the names of the actual XYZ Company Defendants when such information becomes available (each a "Defendant Company" and collectively, "Defendant Companies"). The parties identified in paragraphs 7 through 11 are hereinafter collectively referred to as "Defendants."

## BACKGROUND FACTS

## PLAINTIFFS' TRADEMARKS AND PRODUCTS

12. In 1992, Mr. Louboutin created the Christian Louboutin brand of shoes, which bear his signature lacquered red sole, and opened the first Christian Louboutin boutique in Paris, France.

13. Plaintiffs have continuously used the red lacquered sole and other trademarks owned by Plaintiffs in connection with Plaintiffs' shoes since 1992.

14. Plaintiffs' shoes bearing the red sole have become the most sought-after and recognizable brand of shoes in the U.S. and abroad. The red sole and the name Christian Louboutin are synonymous with glamour, luxury and style. Plaintiffs' shoes are instantly recognizable based upon their distinctive red sole. Plaintiffs' shoes sell at retail in the range of $495 to $6,395 per pair.

15. Plaintiffs' shoes are worn by numerous famous celebrities, fashion designers, and socialites, including Oprah Winfrey, Halle Berry, Angelina Jolie, Salma Hayek, Jennifer Lopez, Sarah Jessica Parker, Diane von Furstenberg, and Princess Caroline of Monaco. For the past three years, Christian Louboutin has topped the Luxury Institute's annual Luxury Brand Status Index, and the Louboutin shoes have been named the Most Prestigious Women's Shoes for each of the past three years.

16. Plaintiffs' continuous and broad use of the red sole has expanded its renown and enabled it to achieve celebrity in the luxury goods market. The red sole trademark is highly visible as a symbol of quality and status.

17. Mr. Louboutin is the owner and Louboutin S.A.S. is the exclusive United States licensee of the entire right, title and interest in and to the Federally registered red sole trademark,

which is the subject of U.S. Registration No. 3,361,597 (the "Red Sole Mark") and the trademark CHRISTIAN LOUBOUTIN (collectively, "Plaintiffs' Marks") in connection with "women's high fashion designer footwear," in Class 25 ("Louboutin Products"). A copy of the mark as registered is shown below:



18.     The registration set forth in paragraph 16 is valid, subsisting, unrevoked, and uncancelled. The registration of the Red Sole Mark constitutes *prima facie* evidence of its validity and conclusive evidence of Plaintiffs' exclusive right to use the Red Sole Mark in commerce in connection with the goods named therein, and commercially related goods. The registration of the Red Sole Mark constitutes constructive notice to Defendants of Plaintiffs' ownership of and exclusive rights in the Red Sole Mark. The Red Sole Mark and the CHRISTIAN LOUBOUTIN trademark have achieved secondary meaning in the marketplace by virtue of many years of continuous use in commerce and substantial investments in the advertisement and promotion of Louboutin Products bearing those marks.[1]

19.     Plaintiffs maintain strict quality control standards for all Louboutin Products. Plaintiffs inspect and approve all genuine Louboutin Products prior to distribution and sale.

20.     All genuine Louboutin Products are distributed through a worldwide network of authorized Louboutin dealers.

---

[1] The United States Court of Appeals of the Second Circuit conclusively has found that Plaintiffs' marks have achieved strong secondary meaning and are entitled to be protected against infringing use when such use, as by Defendants herein, is of a Red Sole in contrast with the remaining parts of the shoe. *See Christian Louboutin, Sa. A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 212 (2nd Cir. 2012). Thus, this is the law of the case.

MEI 15689834v.1

21. To date, Plaintiffs have spent millions of dollars in advertising and promoting the Louboutin Products and the Red Sole Mark in the United States and throughout the World, and display the Red Sole Mark in its advertising and promotional materials. As a result, Plaintiffs have enjoyed millions of dollars in sales of the Louboutin Products. The public, customers, and the luxury goods industry have come to associate the Red Sole Mark with products of exceptional materials, style, workmanship and reliability, and come to recognize that products bearing the Red Sole Mark originate with Plaintiffs.

22. The Red Sole Mark is famous not only within the United States but throughout the World, entitling it to the greater protection afforded marks with such international distinction under both United States Law and International Treaties, such as the Paris Convention and the Trade-Related Aspects of Intellectual Property Rights (the "TRIPS Agreement"), both of which have been entered into by the United States.

## DEFENDANTS' CONDUCT

23. Defendants have knowingly and willfully manufactured, imported, distributed, offered for sale, and sold various counterfeit versions of the Louboutin Products, to wit: shoes bearing the Red Sole Mark (the "Counterfeit Products"). Images of two of the Counterfeit Products are shown below:

 

24. Plaintiffs' investigator and researcher purchased several Counterfeit Products in 2012 and 2013. Sales took place at various locations, including the "Easy Pickins" store, located at Bay Plaza, 2100 Bartow Avenue, Spot 267, Bronx, NY 10475.

23. Plaintiffs have examined and inspected representative samples of the Counterfeit Products and confirmed that the products are indeed counterfeit.

25. The Counterfeit Products are not genuine Louboutin Products. Plaintiffs did not manufacture, inspect, or package the Counterfeit Products, and did not approve the Counterfeit Products for sale or distribution. Defendants are not authorized to manufacture, distribute, offer for sale, or sell products bearing the Red Sole Mark. Defendants, without authorization or license from Plaintiffs have used the Red Sole Mark in connection with Defendants' advertisement, offer for sale, and sale of the Counterfeit Products.

26. At all times relevant, Defendants were and are aware that the Counterfeit Products they sell are not genuine Louboutin Products.

27. Defendants' use of Plaintiffs' Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is likely to cause confusion, mistake, or to deceive.

28. Defendants' use of the Red Sole Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Counterfeit Products is causing irreparable harm to Plaintiffs.

## COUNT ONE

### FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. § 1114)

29. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

30. Plaintiffs' Red Sole Mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products of the very highest quality and reputation finding their source in Plaintiffs.

31. Upon information and belief, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the Red Sole Mark, and the fact that Defendants' Counterfeit Products bear a mark which is confusingly similar to the Red Sole Mark, Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products in direct competition with Plaintiffs' sale of genuine Louboutin Products, in or affecting interstate commerce.

ME1 15689834v.1

32. Defendants' use of copies or simulations of the Red Sole Mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputations, goodwill and sales.

33. Plaintiffs have no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputations.

## COUNT TWO

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

34. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

35. The Counterfeit Products sold and offered for sale by Defendants are of the same general nature and type as the Louboutin Products sold and offered for sale by Plaintiffs and, as such, are likely to cause confusion to the general purchasing public.

36. By misappropriating and using the Red Sole Mark, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion among ultimate purchasers as to both the source and sponsorship of such merchandise.

37. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale, and/or sale of the Counterfeit Products creates express and implied

misrepresentations that the Counterfeit Products were created, authorized or approved by Plaintiffs, all to Defendants' profit and Plaintiffs' great damage and injury.

38. Defendants' aforesaid acts are in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Red Sole Mark, in connection with their goods and services, in interstate commerce constitutes a false designation of origin and unfair competition.

39. Plaintiffs have no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputations.

## COUNT THREE

### FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125 (C))

40. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

41. Plaintiffs' Red Sole Mark is a "famous mark" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and was a famous mark prior to Defendants' conduct as alleged herein.

42. Defendants' manufacture, distribution, offer for sale, and/or sale in commerce of the Counterfeit Products is likely to and does dilute the distinctive quality of the Red Sole Mark, and was done with the willful intent to trade on Plaintiffs' reputations and/or to cause dilution of the Red Sole Mark.

ME1 15689834v.1

43. Defendants' unauthorized use of the Red Sole Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such manufacture, distribution, sale and/or offer for sale was not authorized or licensed by Plaintiffs.

44. Defendants' aforesaid acts are in knowing and willful violation of Plaintiffs' rights under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

45. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputations.

## COUNT FOUR

### COMMON LAW TRADEMARK INFRINGEMENT

46. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

47. Plaintiffs have built up valuable goodwill in the Red Sole Mark and the distinctive appearance of genuine Louboutin Products bearing the Red Sole Mark, thereby giving the Red Sole Mark secondary meaning.

48. With full knowledge of the fame of the Red Sole Mark, Defendants have traded, and continue to trade, on the goodwill associated with the Red Sole Mark, and mislead the public into assuming a connection between the Counterfeit Products and Plaintiffs.

49. Defendants' unauthorized use of the Red Sole Mark on the Counterfeit Products is likely to permit Defendants to pass off the Counterfeit Products to the general public as those of Plaintiffs, all to the detriment of Plaintiffs and the unjust enrichment of Defendants.

50. Defendants' acts of trademark infringement cause confusion, mislead and deceive the public as to the source of Defendants' Counterfeit Products, permit Defendants to pass off the Counterfeit Products as Plaintiffs' merchandise, and falsely suggest a connection between Defendants and Plaintiffs and will continue to do so, in violation of the common law of the State of Illinois, and to the detriment of Plaintiffs and the unjust enrichment of Defendants.

51. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to their goodwill and reputations.

## COUNT FIVE

### UNFAIR COMPETITION UNDER NEW YORK LAW

52. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

53. Defendants' manufacture, distribution, offer for sale, and/or sale in commerce of the Counterfeit Products is likely to and does constitute passing-off of Defendants' Counterfeit Products as those of Plaintiffs and constitutes infringement of the Red Sole Mark. Defendants' conduct in using a counterfeit of the Red Sole Mark on Defendants' shoes constitutes an unfair or deceptive act or practice, or an unfair method of competition.

54. Defendants' conduct is likely to and does cause consumer confusion and injures Plaintiffs' business reputation, thereby having a negative impact upon commerce.

55. Defendants' conduct was done with the willful intent to trade on Plaintiffs' reputations and/or to pass-off Defendants' Counterfeit Products as authentic Louboutin Products.

56. Defendants' unauthorized use of the Red Sole Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such manufacture, distribution, sale and/or offer for sale was not authorized or licensed by Plaintiffs.

57. Plaintiffs have been injured by Defendants' conduct. Plaintiffs have no adequate remedy at law, and if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to Plaintiffs' goodwill and reputations.

## COUNT SIX

### TRADEMARK AND TRADE DRESS INFRINGEMENT AND COUNTERFEITING UNDER NEW YORK LAW

58. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

59. Defendants' acts as described above constitute trademark and trade dress infringement and counterfeiting under New York common and/or statutory law. N.Y. Gen. Bus. Law §§ 360-k and 360-o.

## COUNT SEVEN

### TRADEMARK DILUTION UNDER NEW YORK LAW

60. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

61. Defendants' acts as described above constitute trademark dilution under New York law and detract from the distinctiveness of Plaintiffs' Red Sole Trademark and the CHRISTIAN LOUBOUTIN trademark, resulting in damage to Plaintiffs and the substantial business and goodwill symbolized by plaintiffs' marks, in violation of New York Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-1.

## COUNT EIGHT

## DECEPTIVE ACTS AND PRACTICES
## UNDER NEW YORK STATUTORY LAW

62. Plaintiffs repeat and reallege the allegations of each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63. Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that Defendants be cited to appear in this case, and upon final judgment, that Plaintiffs receive the following relief:

1. That Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through or under them be enjoined and restrained, at first preliminarily during the pendency of this action and, thereafter, permanently:

    a) from using in any manner the Plaintiffs' Marks, or any other mark which so resembles said trademarks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not Plaintiffs', or not authorized by Plaintiffs to be sold in connection with each of the Red Sole Mark;

    b) from passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Plaintiffs, not Plaintiffs', or not produced under the control and supervision of Plaintiffs and approved by Plaintiffs for sale under the Red Sole Mark;

      c) from committing any acts calculated to cause purchasers to believe that Defendants' products are those sold under the control and supervision of Plaintiffs, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Plaintiffs;

      d) from further diluting and infringing the Red Sole Mark and damaging Plaintiffs' goodwill;

      e) from otherwise competing unfairly with Plaintiffs in any manner; and

      f) from shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear the Plaintiffs' Marks or any mark confusingly similar thereto.

    2. That Defendants, their officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them, and any banks, savings and loan associations or other financial institutions, or agencies which engage in the transfer of real property, who receive actual notice of the Court's order, by personal service or otherwise, shall be temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks or other assets of Defendants, without prior approval of the Court, except as to a Defendant that files with the Court and serves upon Plaintiffs' counsel: (1) an accounting of that Defendant's assets having a value of two thousand dollars ($2,000) or more, and the location and identity thereof; and (2) uncontradicted documentary proof accepted by Plaintiffs (such acceptance not to be unreasonably withheld) that particular assets are not proceeds of that

Defendant's counterfeiting activities, in which case those particular assets shall be released to that Defendant.

3. That Defendants be required upon service of this Complaint to deliver immediately up to Plaintiffs any and all products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of Defendants or under their control bearing the Red Sole Mark, the Christian Louboutin trademark or each of them, alone or in combination with any other words, or used in connection with the advertising, offering for sale or sale of products not Plaintiffs', or not made under the authorization and control of Plaintiffs.

4. That Defendants be required immediately upon service of this Complaint to supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold products falsely bearing the Red Sole Mark or products not authorized by Plaintiffs to be sold in connection with said mark.

5. That Defendants be required immediately upon service of this Complaint to deliver up for destruction their entire inventory of Counterfeit Products bearing Plaintiffs' Marks.

6. That Defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs 1 through 5, *supra*.

7. That Defendants account for and pay over to Plaintiffs profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and, that the amount of

damages for infringement of Plaintiffs' registered trademark be increased by a sum not exceeding three times the amount thereof as provided by law.

8. That Plaintiffs be awarded actual damages of an amount to be proven at trial and punitive damages in an amount to be proven at trial.

9. That Plaintiffs be awarded statutory damages in the amount of $2,000,000 per mark infringed pursuant to 15 U.S.C. § 1117(c).

10. That Plaintiffs be awarded interest, including pre-judgment interest, on all sums.

11. That Plaintiffs be awarded reasonable attorneys' fees and have such other and further relief as the Court may deem equitable.

12. That Plaintiffs have such other and further relief as the Court deems just and proper.

Dated: May 24, 2013

Respectfully submitted,

*Harley I. Lewin*
Harley I. Lewin
Stephanie J. Cohen
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, NY  10167
Tel: (212) 609-6800
Fax: (212) 6096921

*Attorneys for Plaintiffs*
*Christian Louboutin S.A.S., Christian Louboutin L.L.C. and Christian Louboutin*

ME1 15689834v.1